**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 1:26-cr-38** |
| | : | |
| **v.** | : | **(Judge Neary)** |
| | : | |
| **MATHEW BAIR,** | : | |
| **Defendant** | : | **Electronically filed** |

# UNITED STATES' BRIEF IN OPPOSITION TO MOTION IN LIMINE TO EXCLUDE THE GOVERNMENT FROM ADMITTING INADMISSIBLE EVIDENCE

BRIAN D. MILLER
United States Attorney

Carlo D. Marchioli
Assistant U.S. Attorney
PA 309217
Sylvia H. Rambo U.S. Courthouse
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Tel: (717) 221-4482
Fax: (717) 221-4493
carlo.d.marchioli@usdoj.gov

September 24, 2026

**TABLE OF CONTENTS**

INTRODUCTION .................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ................................. 1

ARGUMENT .......................................................................... 5

I. The photos and video are not evidence of other acts because they directly prove the offense charged in count 1 ........................................................ 6

II. The probative value of the photos and video is not substantially outweighed by the danger of unfair prejudice ........................................................ 20

CONCLUSION ........................................................................ 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Flores-Figueroa v. United States*,
556 U.S. 646 (2009) .......... 24

*Huddleston v. United States*,
485 U.S. 681 (1988) .......... 19

*Old Chief v. United States*,
519 U.S. 172 (1997) .......... 21, 22, 23, 25

*United States v. Benjamin*,
711 F.3d 371 (3d Cir. 2013) .......... 23

*United States v. Bergrin*,
682 F.3d 261 (3d Cir. 2012) .......... 21

*United States v. Cammarata*,
145 F.4th 345 (3d Cir. 2025) .......... 21

*United States v. Daniels*,
2022 WL 4077131 (3d Cir. 2022) .......... 26

*United States v. Finley*,
726 F.3d 483 (3d Cir. 2013) .......... 21, 26

*United States v. Folk*,
577 F. App'x 106 (3d Cir. 2014) .......... 26

*United States v. Green*,
617 F.3d at 233 (3d Cir. 2010) .......... 6, 7

*United States v. Johnson*,
199 F.3d 123 (3d Cir. 1999) .......... 20

*United States v. Johnson*,
2024 WL 617719 (3d Cir. 2024) .......... 6

*United States v. Mack*,
2023 WL 142804 (3d Cir. 2023) .......... 8

*United States v McCoy*,
410 F.3d 124 (3d Cir. 2005) .......... 24

*United States v. Powell*,
444 F. App'x 517 (3d Cir. 2011) .......... 20

*United States v. Savage*,
85 F.4th 102 (3d Cir. 2023) .......... 19

*United States v. Sriyuth*,
98 F.3d 739 (3d Cir. 1996) .......... 21

*United States v. Steiner*,
847 F.3d 103 (3d Cir. 2017) .......... 3

*United States v. Strickland*,
___ F.4th ___, 2026 WL 2409678 (3d Cir. 2026) .......... 19

**<u>Statute</u>**

18 Pa. C.S. § 6111 .......... 8

**<u>Rules</u>**

Fed. R. Evid. 403 .......... 20

Fed. R. Evid. 404 .......... 6

## INTRODUCTION

The Court should deny Defendant Mathew Bair's motion to exclude multiple photos and one video from the trial in this case.[1] The photos and video are intrinsic evidence of the gun crimes alleged in the superseding indictment—that is, they directly prove those crimes and specifically the possession and knowledge elements under 18 U.S.C. § 922(g)(1). Bair's reliance on Federal Rule of Evidence 404(b) is therefore misplaced. Additionally, the Rule 403 balancing analysis weighs heavily in favor of admission. Bair's suggestion that possession will not be an issue at trial, thus requiring the exclusion of the photos and video, runs headlong into the well-settled proposition that a defendant is not permitted to stipulate the evidence away.

## PROCEDURAL AND FACTUAL BACKGROUND

The FBI opened an investigation of Bair in early 2024 based in part on threats he made on Telegram against a journalist. The investigation revealed additional threats by Bair, including general threats against judges, the suggestion that he was planning a mass-

[1] As noted below, the Government will not seek to admit the photo with the Bates No. ending in 3680.

casualty attack, leaving a brick at a Pennsylvania State Police barracks, threats to burn down the John Brown Raid Headquarters historical site, a threat against an employee of a terrorism research entity, and the suggestion that he planned to take some action at an electrical substation. Based on Bair's threats and his involvement in an accelerationist group called Injekt Division, the FBI utilized undercover officers during the investigation in an attempt to gain additional information about Bair's plans and information about Injekt Division's activities and its members.

The investigation also developed evidence that Bair—despite having prior felony convictions—possessed firearms. That evidence included pictures and videos that Bair posted to Telegram or sent to others, statements Bair made about having or using firearms, and Bair using firearms at shooting ranges.

In March 2026, a grand jury returned an indictment charging Bair with unlawfully possessing firearms as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Doc. 1. This charge was based on Bair's possession of guns at a shooting range in February 2025.

Bair was arrested on March 11, 2026, and the FBI found three firearms in his residence: a Canik pistol, a Rock Armory Island pistol, and a rifle.

In August 2026, a grand jury returned a superseding indictment charging Bair with two counts under Section 922(g)(1) based on the guns found in his residence. Doc. 35. Count 1 alleges that Bair unlawfully possessed the two pistols from a date unknown to the grand jury but not later than on or about October 17, 2024, to on or about March 11, 2026. *Id.* Count 2 alleges that Bair unlawfully possessed the rifle on or about March 11, 2026. *Id.* The indictment includes two counts (rather than a single count listing all three guns) because the investigation developed evidence (including the challenged photos and video) indicating that Bair obtained the pistols much earlier than the rifle. *See United States v. Steiner*, 847 F.3d 103, 115 (3d Cir. 2017) ("Likewise, multiple convictions for possession of multiple firearms may be appropriate where the firearms in question were seized in different locations *or if they were acquired in separate transactions*.") (emphasis added).

Trial is scheduled to begin on October 26, 2026.

Pending before the Court is Bair's motion to exclude multiple photos and one video that the Government intends to present at trial to prove that Bair possessed firearms as alleged in the superseding indictment and that he knew that he had previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year. Bair's motion seeks the exclusion of:

- Photos of Bair and an undercover officer, each holding a gun, in front of a fence at Gifford Pinchot State Park on October 17, 2024 (Bates No. 29, 30, 2118, 3526, and 3532). Bates No. 29 is a close-up photo of only Bair, and Bates No. 30 is a Telegram post that includes photos of the two men.
- Photos of the rear seat of Bair's vehicle where Bair displayed multiple items, including two guns, on January 24, 2025 (Bates No. 201, 449, and 2340). Bates No. 201 and 2340 are a Telegram post that includes a photo of the rear seat.
- A photo showing a gun, the Injekt Division flag, and a book. (Bates No. 3680). The Government does not intend to seek to introduce this photo at trial.

- A video showing two guns, ammunition, and other items (Bates No. 2515). The video was provided by an undercover officer to the FBI on March 23, 2025.

## ARGUMENT

The Court should deny Bair's motion. The photos and video are important evidence that directly proves Bair's possession of the pistols as alleged in count 1 of the superseding indictment. They also are probative of Bair's knowledge that he had at least one prior conviction for a crime punishable by imprisonment for a term exceeding one year. They are therefore not evidence of other acts and are not covered by Rule 404(b). Nor is their probative value substantially outweighed by the danger of unfair prejudice. Bair's argument relies primarily on his suggestion that he will not contest possession. But a stipulation is not a sufficient basis to exclude relevant evidence. Bair's argument, moreover, ignores the evidence's probative value on the knowledge element.

## I. The photos and video are not evidence of other acts because they directly prove the offense charged in count 1.

Federal Rule of Evidence 404(b) prohibits "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But the rule provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Rule 404(b) addresses evidence of other acts—that is, extrinsic evidence. *United States v. Green*, 617 F.3d at 233, 245 (3d Cir. 2010). It does not, by contrast, cover intrinsic evidence. *Id.* "[E]vidence is intrinsic if it directly proves the charged offense," or if it is evidence of "acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime." *Id.* at 248-49 (quotation marks omitted).

The challenged photos and video are not extrinsic evidence and are thus not subject to Rule 404(b). Rather, they are intrinsic evidence of the crime charged in count 1—that Bair unlawfully possessed two

pistols from a date unknown to the grand jury, but not later than on or about October 17, 2024, to on or about March 11, 2026. They directly prove two elements of the charged offense.

First, and most obviously, the pictures and video prove that Bair possessed firearms as alleged in count 1. Bair does not appear to dispute this fact. It is difficult to envision evidence more probative of a person's firearm possession than a photo of him holding a gun; a photo of guns in his backseat; and a video of guns displayed with his other possessions. *Cf. United States v. Johnson*, 2024 WL 617719, at *4 (3d Cir. 2024) ("If someone tells you 'I have guns and drugs,' and then you find guns and drugs in his house, his statement is direct proof that the guns and drugs are in fact his."). The evidence, in other words, "is admissible as part and parcel of the charged offense." *Green*, 617 F.3d at 245. The Court should reject Bair's attempt to exclude evidence of the very act—possession—that is criminal.

Second, the pictures and video are evidence that Bair knew that he was previously convicted of at least one crime punishable by

imprisonment for a term exceeding one year.[2] The FBI recovered three guns from Bair's residence on March 11, 2026: the two pistols charged in count 1 and the rifle charged in count 2. Importantly, Bair did not obtain those guns from a federally licensed firearms dealer. Instead, Bair's girlfriend (Stephany Feiser) purchased—at Bair's suggestion—one of the pistols from Bair's friend in 2020; another friend left the other pistol with Bair sometime thereafter; and Bair purchased the rifle from a coworker in late 2025 or early 2026.[3] Although the defense has indicated that Bair will not dispute that he at least constructively possessed these firearms, the defense has suggested that it will vigorously contest that Bair knew he had been convicted of a crime

[2] Although the Government must prove that Bair knew he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, the Government need not prove that Bair knew he was a "felon" or knew he was prohibited from possessing firearms. *United States v. Mack*, 2023 WL 142804, at *1 & n.8 (3d Cir. 2023) ("Other Circuit Courts of Appeals have made clear that *Rehaif* did not alter the well-known maxim that ignorance of the law (or mistake of law) is no excuse to a conviction under § 922(g).").

[3] Under Pennsylvania law, the sale of a handgun must generally occur at a federal firearms licensee or a county sheriff's office, but the sale of a long gun need not do so. *See* 18 Pa. C.S. § 6111(c) and (f). Feiser went to a federal firearms licensee when she purchased the pistol from Bair's friend.

punishable by more than one year in prison. The challenged photos and video are probative of the knowledge element because they show that Bair treated at least the handguns as his own. That fact, coupled with Bair obtaining the guns without going through a federal firearms licensee, supports the inference that Bair knew he had at least one conviction that would have made it impossible for him to obtain a gun through a federal firearms licensee.

Stated another way, it is a commonsense proposition that someone who wants to obtain guns for his own use will obtain them through lawful channels unless he knows that those channels are closed off to him. Without evidence like the challenged photos and video, the jury may conclude that although Bair had access to the guns (and thus constructively possessed them), he did not seek them out to use as his own. Indeed, Bair suggested as much in his post-arrest interview, stating that one pistol was registered to and purchased by Feiser and that the other pistol was inadvertently left by his friend (who was a trucker). The challenged pictures and video present a contrary account—that Bair treated the guns as his own. And with that fact, the jury can infer that Bair's attainment of those guns without going

through a federal firearms licensee was due to his knowledge that he would not have been able to do so because of his prior convictions.

Bair correctly anticipates the Government's argument that the photos and video are direct evidence of the charged offense, but counters that "the context of these photos (and video) along with the other evidence available to the government makes it clear that this evidence is meant to do one thing and one thing only: impugn Mr. Bair's character, in direct contradiction of the protection of Rule 404(b)." Doc. 48, at 5-6. That is not correct. The Government did not choose the contexts in which Bair chose to display his guns. Had he taken and shared photos of his possession of guns while wearing business attire, then the Government would seek to use those photos as well. And while it is not clear what Bair means by "the other evidence available to the government," he is presumably referring to the additional derogatory evidence developed during the FBI's investigation and of which the Court became aware when considering Bair's pretrial detention. Doc. 24. The Government, however, is not seeking to introduce much of that evidence because it (unlike the challenged photos and video) is not direct evidence of Bair's unlawful firearm possession.

Bair acknowledges that the evidence could directly prove the offense, but asserts that the Government would need to prove that he is in the pictures or that the guns displayed are those listed in the indictment, and that "to do that, the government would be allowed to get into irrelevant evidence that does nothing but paint Mr. Bair in a bad light." Doc. 48, at 6. That is also incorrect. The Government anticipates presenting the following foundational evidence for the pictures and video.

- The photos of Bair and an undercover officer at Gifford Pinchot State Park on October 17, 2024:
    - Special Agent Dan Wright will testify that he conducted surveillance of Bair and the undercover officer that evening. He observed Bair and the officer travel to the area of Gifford Pinchot State Park.
    - Agent Wright recently went to the state park to confirm that the photos were taken there. One of Agent Wright's more recent photos is displayed on the right.






- Bair and the undercover officer's conversation while at the state park was recorded, and the two discussed taking pictures, wearing a mask, a "no trespassing sign," Injekt, and displaying a flag. Bair also stated that he had with him a 9mm gun with a white body, and that the gun was left by a buddy who is a truck driver. These statements are consistent with the photos as well as Bair's post-arrest interview (summarized above) in which he discussed the Canik pistol that the FBI found in his residence.
- The white pistol Bair is holding is distinctive and matches the appearance of the Canik pistol seized from Bair's residence (pictured on the right).





- The flag displayed in the pictures appears to be identical to a flag hanging outside of Bair's residence in March 2026 (left) and his former residence (right).






- The vest Bair is wearing in the pictures (including Bair's display of a road flare) matches vests Bair displayed in his vehicle (center picture and addressed further below) and found in Bair's residence when he was arrested (right picture).







- The photos showing the rear seat of Bair's vehicle on January 24, 2025:
  - During Bair's recorded post-arrest interview, Bair indicated his familiarity with his Telegram post in which he included one of the photos along with the phrase "where the Dirty South begins," which he explained were song lyrics. Bair also stated, "There's nothing saying I didn't take that picture here in my yard. Well, I would've been living in Spring Grove at the time. But take the picture in Spring Grove, post it, leave the pistol at home and then go" to Washington, DC. Bair then confirmed that he "absolutely [did] not" take the pistols to Washington.
  - Agent Wright will testify that the FBI installed a pole camera outside of Bair's residence in Spring Grove, PA.

On January 24, 2025, pole camera video shows Bair manipulating items in the rear seat of his vehicle.



- Agent Wright will testify that later that day he received the pictures of Bair's rear seat.
- Both guns displayed in the pictures match the pistols seized from Bair's residence and charged in count 1.





 

- Feiser will testify that the pictures show Bair's rear seat, and that the black gun matches the pistol she purchased.
- On January 24, 2025, Bair traveled to Washington, DC, with two undercover officers. That trip was audio recorded, and at one point, Bair asked, "Do any of you care if I carry bear mace on the side? Legal in DC." Bear mace was displayed in the pictures.



- The video showing the two pistols and other items:
    - Agent Wright will testify that he received this video in March 2025.[4]
    - Feiser will testify that she did not create the video, that the black gun matches the pistol she purchased, and that the nativity set displayed in the video is the set the family typically displayed during the Christmas season. She will also testify that the paddle or cutting board displayed in the video was in their kitchen. That paddle or cutting board was hanging in the kitchen on the day of Bair's arrest.

[4] The undercover officer who provided the video to Agent Wright stated that Bair posted the video on his Telegram channel around Christmas time in 2024. The video was also found on Bair's computer following the execution of a search warrant in August 2026. Metadata indicates that the video may have been created in December 2023. That does not affect the analysis because the superseding indictment alleges that Bair's possession of the pistols began on a date unknown to the grand jury but no later than October 17, 2024, so the video is evidence of Bair's continued possession as alleged in count 1. Additionally, as explained above, the video is also evidence of Bair's knowledge that he had been convicted of a crime punishable by imprisonment for a term exceeding one year.






- And again, both guns displayed in the video match the pistols seized from Bair's residence and charged in count 1.








All of this foundational evidence establishes that the photos and video either show Bair physically possessing at least one gun listed in count 1 or show Bair's display of at least one gun listed in count 1. Contrary to Bair's contention, this foundational evidence is therefore relevant[5] and does not unfairly present him in a "bad light."

[5] The admission of this foundational evidence will not, as Bair suggests, "cause judicial inefficiency and waste time." Doc. 48, at 8. As explained, most of the evidence is admissible through Agent Wright's testimony or Feiser's testimony. Bair is incorrect when he suggests that the standard for admissibility requires absolute certainty of certain facts, such as the serial numbers of the guns displayed in the pictures and video. *Id.* at 6. The relevancy of the pictures and video is a preliminary question governed by Rule 104, and "[w]hen dealing with issues of relevance based on conditional facts, Federal Rule of Evidence 104(b) requires courts to examine the proffered evidence and determine whether a jury could reasonably find the conditional fact by a preponderance of the evidence." *United States v. Savage*, 85 F.4th 102, 131 n.30 (3d Cir. 2023) (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988)); *see also United States v. Strickland*, ___ F.4th ___,

The photos and video are relevant and directly prove the offense charged in count 1. Rule 404(b) is not applicable, and the photos and video should be admitted.[6]

## II. The probative value of the photos and video is not substantially outweighed by the danger of unfair prejudice.

Under Rule 403, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "In weighing the probative value of evidence against the dangers . . . in Rule 403, the general rule is that the balance should be struck in favor of admission." *United States v. Johnson*, 199 F.3d 123, 128 (3d Cir. 1999) (quotation marks omitted). Rule 403 is meant to

---

2026 WL 2409678, at *3 (3d Cir. 2026) ("The measure of reasonable doubt need not be applied to specific detailed facts, but only to the ultimate issue.") (quotation marks omitted); *United States v. Powell*, 444 F. App'x 517, 521 (3d Cir. 2011) (noting that the jury was capable of drawing an inference that the gun seized was similar to the gun seen in a video).

[6] Even assuming Rule 404(b)'s applicability, the evidence would be admissible to prove knowledge, as explained above, and this brief would qualify as the notice required under Rule 404(b)(3).

guard against "*unfair* prejudice," "that is, prejudice based on something *other* than the evidence's persuasive weight." *United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) (emphasis in original) (quotation marks and brackets omitted). Thus, the Court "must assess the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds." *United States v. Sriyuth*, 98 F.3d 739, 747-48 (3d Cir. 1996) (internal quotation marks omitted). The Third Circuit "strongly prefer[s] that a district court detail its Rule 403 balancing on the record." *United States v. Cammarata*, 145 F.4th 345, 364 (3d Cir. 2025) (quotation marks omitted).

The pictures and video are, as explained, probative of and extremely strong evidence of Bair's possession of the two pistols listed in count 1 of the indictment. Bair's only response is that "[p]ossession is not a contradicted fact in this case." Doc. 48, at 2. But it is black-letter law that "the government is entitled to prove its case free from a defendant's preference to stipulate the evidence away." *United States v. Finley*, 726 F.3d 483, 492 (3d Cir. 2013) (citing *Old Chief v. United States*, 519 U.S. 172, 189 (1997)). And while "the existence of a

stipulation is a relevant factor in the Rule 403 balancing process," the Government is generally "entitled to put forward the relevant evidence that it chooses." *Id.* In other words, "the prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." *Old Chief*, 519 U.S. at 192. This rule "rests on good sense." *Id.* at 189. As explained by the Supreme Court:

> A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Id.*

These principles apply fully here. Bair proposes a trial sterilized of the criminal act charged in the superseding indictment—his possession. He seeks to suggest to the jury that the FBI merely happened upon his home in March 2026 and discovered that he

passively (albeit constructively) possessed firearms that were stored there, leaving the jury with the misimpression that the Government's investigation did not reveal that he actually possessed firearms on multiple occasions. Rule 403 does not demand that the Government strip down its case in this manner. *See Old Chief*, 519 U.S. at 188-89 ("[T]here lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. . . . If jurors' expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party. . . . [T]he prosecution with its burden of proof may prudently demur at a defense request to interrupt the flow of evidence telling the story in the usual way.").

The need for the jury to hear about and see Bair's instances of possession prior to his arrest on March 11, 2026, is strengthened by count 1's allegation that he possessed the pistols for years and certainly by October 17, 2024.[7] That is the date the photos were taken at Gifford

[7] "[T]he felon-in-possession crime in § 922(g)(1) is a continuing offense." *United States v. Benjamin*, 711 F.3d 371, 378 (3d Cir. 2013).

Pinchot State Park. The Government should be permitted to present evidence to prove that specific allegation.

Even setting the possession element aside, the challenged photos and video are probative of Bair's knowledge that he was previously convicted of a crime punishable by imprisonment for a term of more than one year, as explained above. Bair does not address that element. Nor does his suggested stipulation cover it. To the contrary, defense counsel has indicated that Bair's defense will focus on this element. And knowledge is frequently the most difficult element to prove in a criminal prosecution because it requires the jury to draw conclusions about what was going on inside someone's mind. *See Flores-Figueroa v. United States*, 556 U.S. 646, 655 (2009) ("Finally, and perhaps of greatest practical importance, there is the difficulty in many circumstances of proving beyond a reasonable doubt that a defendant has the necessary knowledge."); *United States v McCoy*, 410 F.3d 124, 132 (3d Cir. 2005) (noting, in a drug case, that "[t]he knowledge and intent elements presented a far greater burden for the Government"). The challenged photos and video are probative of both Bair's possession and knowledge, tilting the Rule 403 balance decisively in favor of

admission. *See Old Chief*, 519 U.S. at 187 ("Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of *separate elements*, striking hard just because it shows so much at once; the account of a shooting that establishes capacity and causation may tell just as much about the triggerman's *motive and intent*.") (emphases added).

Bair's principal rejoinder is that the photos and video will cause the trial to become about whether he is a "dangerous domestic terrorist." Doc. 48, at 8. The evidence does not present that risk. The Government does not seek to probe why Bair created the photos and video or what he hoped to accomplish through them. Nor does the Government seek to present the substantial evidence of Bair's dangerousness that it compiled during its investigation. The Government does not seek to admit evidence that Bair threatened a journalist; encouraged individuals to "shoot your local judge"; suggested that he was planning a mass-casualty attack; left a brick at a Pennsylvania State Police barracks; threatened to burn down the John Brown Raid Headquarters historical site; took threatening photos

outside of an electrical substation while holding a machete; and so on. Doc. 24, at 6-15. Instead, the Government seeks to present a handful of items that are direct evidence of the charged gun crimes.

Multiple courts, including the Third Circuit, have rejected Rule 403 challenges to evidence that presented a danger of unfair prejudice much more pronounced than the challenged photos and video. In *Finley*, for example, the Third Circuit rejected the defendant's argument that the district court should have excluded videos and images of child pornography. Even though the defendant offered to stipulate that the videos and images contained child pornography and even though knowledge was not an issue in the case, the Third Circuit explained that "the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." *Finley*, 726 F.3d at 492 (cleaned up); *see also United States v. Daniels*, 2022 WL 4077131, at *2 (3d Cir. 2022) (in a Section 922(g)(1) prosecution, rejecting argument that district court should have excluded or limited a video of a gunman firing 16 shots at a victim); *United States v. Folk*, 577 F. App'x 106, 107 (3d Cir. 2014) (in a gun and drug prosecution, rejecting argument that district

court should have excluded testimony that the defendant "grabbed a gun during [an] argument, held their daughter, and pointed the gun at [the witness] while threatening to kill her"). The Court should follow suit and conclude that Rule 403 does not support excluding the challenged photos and video.

## CONCLUSION

The Court should deny Bair's motion.[8]

September 24, 2026

Respectfully submitted,

BRIAN D. MILLER
United States Attorney

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney
PA 309217
Sylvia H. Rambo U.S. Courthouse
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Tel: (717) 221-4482
Fax: (717) 221-4493
carlo.d.marchioli@usdoj.gov

[8] Again, the Government will not seek to admit the photo with the Bates No. ending in 3680.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Local Rule 7.8(b)(2), because it contains 4,643 words.

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I certify that on September 24, 2026, I served the foregoing document by electronic service on the following individual:

Beatrice Diehl, Esq.
Beatrice_Diehl@fd.org

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney